Dear Mr. Jones:
You have requested an opinion of the Attorney General, in your capacity as City Attorney for the City of Shreveport ("City"), regarding the legality of a written agreement entered into between the City and a classified employee on March 21, 1995. The substantive provisions giving rise to this inquiry may be briefly summarized as follows:
 1. The employee's resignation was effective April 15, 1995.
 2. The employee continued to receive salary, car allowance, insurance and related benefits until August 15, 1995, or four months after the effective resignation date, contingent upon the employee not receiving other employment.
 3. The employee received a lump sum payment for accumulated vacation through April 15, 1995, on the termination date of the agreement (i.e., August 15, 1995).
You state that this agreement was the result of a negotiated separation of a classified employee from the City's service which was reduced to writing and executed by the employee and Mayor. The employee had been with the City for a number of years and, at the administration's request, entered into good faith negotiations to effect an amicable separation from employment. The intent was to achieve the separation of the employee while foreclosing protracted grievance and appeal procedures, thereby enabling the administration to move immediately to fill the position vacated.
You specifically ask whether this agreement contravenes the provisions of R.S. 14:138 and/or Article VII, Section 14 of the Louisiana Constitution of 1974.
In answer to your first question, R.S. 14:138 sets forth the elements constituting the crime of "Public Pay Roll Fraud". It provides as follows:
"Public Pay Roll Fraud is committed when:
 (1) Any person shall knowingly receive any payment or compensation, or knowingly permit his name to be carried on any employment list or pay roll for any payment or compensation from the state, for services not actually rendered by himself, or for services grossly inadequate for the payment or compensation received or to be received according to such employment list or pay roll; or
 (2) Any public officer or public employee shall carry, cause to be carried, or permit to be carried, directly or indirectly, upon the employment list or pay roll of his office, the name of any person as employee, or shall pay any employee, with knowledge that such employee is receiving payment or compensation for services not actually rendered by said employee or for services grossly inadequate for such payment or compensation.
 This article shall not apply in a situation where a bona fide public officer or public employee, who is justifiably absent from his job or position for a reasonable time, continues to receive his usual compensation or a part thereof.
 Whoever commits the crime of public pay roll fraud shall be fined not more than one thousand dollars, or imprisoned, with or without hard labor, for not more than two years, or both."
As can be gleaned from the above, the crime of public pay roll fraud is committed when one knowingly pays and/or receives payment for work or services not actually performed. As previously discussed, the agreement in question represents a negotiated separation of an employee from the City's service. Based upon the factual scenario presented for our review, it would appear that there was no intent on the part of either the City or the affected employee to knowingly pay or receive payment for services not rendered.
I have consulted with Frederick A. Duhy, Assistant Attorney General, Criminal Division, and he concurs with the conclusion that the agreement, at issue, is not violative of R.S.14:138. We now focus our attention on Article VII, Section 14 as it relates to the agreement.
The issue of whether a public employee may receive severance pay in lieu of giving the employee notice of termination has been previously addressed by the jurisprudence of this state, as well as opinions of this office. While the payment to public employees for accrued sick and/or annual leave and retirement benefits have been historically sanctioned, the entitlement to severance pay has not. Shows v. MorehouseGeneral Hospital, et al., 463 So.2d 884 (La.App. 2nd Cir. 1985)Writ denied; Crist v. Parish of Jefferson, 470 So.2d 306(La.App. 5th Cir. 1985); Attorney General Opinion Nos. 95-463,94-474, 89-411 and 78-1620.
In the Crist case, the defendant parish appealed from a judgment granting a former employee terminal leave compensation. At the time of his employment, a parish ordinance afforded terminal leave equal to one month's pay for each year of parish service. In reversing the trial court's award, the Court held:
 "As we view it, the terminal leave compensation provided for by Ordinance No. 11775 was either a gratuitous or remunerative donation. Article 7, Section 14 of the 1974 Constitution, above quoted, makes no distinction between the types of donations it prohibits. Therefore, the prohibition contained in Article 7, Section 14(A) encompasses the terminal leave compensation in question here. Hence, we hold Ordinance No. 11775 became invalid at the moment the 1974 Constitution became effective."
In the Shows case, plaintiff, a former public hospital director, appealed from a judgment rejecting his demands to enforce a provision of his employment contract that two years notice or two years full salary would be given him if he was terminated. On the contractual issue, the Court held:
 "In the absence of a special law . . . it is against public policy to permit public boards to contract away the right to remove employees at will by entering into contracts of employment for definite periods of time. If the contract be construed as one requiring either two years `reasonable notice' to Shows before termination or as one that guarantees a two-year term of employment, Shows does not have a cause of action for damages for wrongful termination because the ordinance authorizing the advisory commission to hire a director did not authorize a term of employment . . . . . A contract for a term under such conditions is ultra vires and unenforceable."
Based upon the above cited authorities, and consistent with the previous opinions rendered by this office, we must conclude that the agreement at issue, to the extent that it allows severance pay in the form of the continuation of salary and car allowance, violates Article VII, Section 14.
While Article VII, Section 14 prohibits the gratuitous donation of public funds, as in the case of severance pay, it does not prohibit the lawfully authorized payment of compensation for labor or services provided in the course of employment and the related benefits of annual and sick leave. Entitlements to insurance and retirement benefits for public employees are specifically provided for in Article VII, Section 14(B). We further direct your attention to the appropriate federal laws that govern the terminated employee's entitlement to continued insurance benefits under Public Law 99-272 (the Consolidated Omnibus Budget Reconciliation Act of 1985).
The employee benefits of annual and sick leave, in this context, are not considered donations; however, to serve a public purpose and provide a public benefit they must be reasonable. In other words, there must be some congruity with the nature of the services rendered, as well as a degree of uniformity with the same type of benefits accorded all other employees. These criteria apply to both the regime of annual and sick leave benefits earned by public employees, as well as the amount of accrued annual and sick leave benefits to be compensated upon termination or resignation.
In summary, it is the opinion of this office that an agreement entered into between the City of Shreveport and an ex-employee of the City providing for severance pay in the form of the continued receipt of salary and car allowance constitutes a violation of Article VII, Section 14 of the Louisiana Constitution. Article VII, Section 14 (B) provides exceptions for the contribution of public funds to pension and insurance programs for the benefit of public employees. Further, the City may provide, in addition to the payment of compensation for labor or services actually rendered, a regime of annual and sick leave benefits and payment for the accrual thereof upon termination or resignation. In this regard, the benefits should be reasonable and implemented through the formal adoption of a leave policy which is congruous to the nature of the services rendered and uniformly accorded to other employees.
Should you have any additional questions concerning these matters, please do not hesitate to contact me.
With kindest regards, I am,
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: ROBERT E. HARROUN, III Assistant Attorney General
RPI:REH, III:jv